MCGREGOR W. SCOTT
United States Attorney
MICHAEL D. ANDERSON
KEVIN C. KHASIGIAN
ROGER YANG
MATTHEW M. YELOVICH
Assistant U. S. Attorneys
501 I Street, Suite 10-100
Sacramento, CA  95814
Telephone:  (916) 554-2700

Attorneys for the United States

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>       Plaintiff,<br><br>       v.<br><br>REAL PROPERTY LOCATED AT 2033 BASTONA DRIVE, ELK GROVE, CALIFORNIA, SACRAMENTO COUNTY, APN: 119-1860-037-0000, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO,<br><br>REAL PROPERTY LOCATED AT 5313 KUNGSTING WAY, ELK GROVE, CALIFORNIA, SACRAMENTO COUNTY, APN: 132-1620-047-0000, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO,<br><br>REAL PROPERTY LOCATED AT 5759 MUSKINGHAM WAY, SACRAMENTO, CALIFORNIA, SACRAMENTO COUNTY, APN: 117-1280-034-0000, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO,<br><br>REAL PROPERTY LOCATED AT 8061 MAYBELLINE WAY, SACRAMENTO, CALIFORNIA, SACRAMENTO COUNTY, APN: 117-0051-008-0000, INCLUDING ALL APPURTENANCES AND IMPROVEMENTS THERETO, | VERIFIED COMPLAINT FOR FORFEITURE *IN REM* |

1

REAL PROPERTY LOCATED AT 9043
PEMBRIDGE DRIVE, ELK GROVE,
CALIFORNIA, SACRAMENTO COUNTY,
APN: 134-0730-009-0000, INCLUDING ALL
APPURTENANCES AND IMPROVEMENTS
THERETO, and

REAL PROPERTY LOCATED AT 9445
MEDSTEAD WAY, ELK GROVE,
CALIFORNIA, SACRAMENTO COUNTY,
APN: 116-0670-046-0000, INCLUDING ALL
APPURTENANCES AND IMPROVEMENTS
THERETO,

        Defendants.

The United States of America, by and through its attorney, McGregor W. Scott, United States

Attorney for the Eastern District of California, for its verified complaint alleges, upon information and

belief, as follows:

## JURISDICTION AND VENUE

1.      This action is brought by the United States of America pursuant to Title 18, United States

Code, Sections 981(a)(1)(A) and (a)(1)(C) and Title 21, United States Code, Sections 881(a)(6) and

(a)(7), seeking the forfeiture of real property connected to federal money laundering and drug crimes,

including the following:

    a.    Real Property located at 2033 Bastona Drive, Elk Grove, California, Sacramento
        County, APN: 119-1860-037-0000, more fully described in Exhibit A;

    b.    Real Property located at 5313 Kungsting Way, Elk Grove, California, Sacramento
        County, APN: 132-1620-047-0000, more fully described in Exhibit B;

    c.    Real Property located at 5759 Muskingham Way, Sacramento, California,
        Sacramento County, APN: 117-1280-034-0000, more fully described in Exhibit C;

    d.    Real Property located at 8061 Maybelline Way, Sacramento, California, Sacramento
        County, APN: 117-0051-008-0000, more fully described in Exhibit D;

    e.    Real Property located at 9043 Pembridge Drive, Elk Grove, California, Sacramento
        County, APN: 134-0730-009-0000, more fully described in Exhibit E; and

    f.    Real Property located at 9445 Medstead Way, Elk Grove, California, Sacramento
        County, APN: 116-0670-046-0000, more fully described in Exhibit F.

2.      This Court has jurisdiction over this action pursuant to Title 28, United States Code,

Verified Complaint for Forfeiture *In Rem*

Sections 1355(a), (b)(1) and (b)(2), and Title 18, United States Code, Section 981.

3.      This district is a proper venue is proper pursuant to Title 28, United States Code, Sections 1355(b)(2) and 1395(a), and Title 18, United States Code, Section 981(h).  .

4.      Since 2014, state and federal law enforcement have investigated an organization of individuals believed to be purchasing homes in the Sacramento region using money from China, converting these residences into indoor marijuana cultivation sites, and then trafficking the processed marijuana to other parts of the country, particularly the Eastern United States.  Law enforcement has identified a number of common links between the residences converted to indoor marijuana grows, including down payments financed by wires mainly from Fujian Province, in China; the use of one of a handful of common Sacramento realtors, namely Person A and Person B; the involvement of hard-money lenders, rather than traditional banks, in purchasing the homes; and the structure and terms of the purchase itself.

5.      Law enforcement has learned that the funding for the illegal residential marijuana grows follows a similar pattern and is structured in a common manner across multiple transactions.  The buyer generally puts $5,000 to $10,000 down, usually through a domestic wire transfer, a personal check, or a cashier's check, followed by a second round of domestic wire transfers or cashier's checks into escrow, often from multiple individuals not listed as co-buyers on any documentation.  At least a portion of the second round of escrow payments are traceable to wire transfers from China, totaling just under $50,000 each, the legal limit for outbound money transfers under Chinese law, and oftentimes include a notation that the funds are for "residential rentals" or "travel."  The remaining financing is obtained through "hard-money" loans, a type of financing more closely connected to acquiring distressed properties, rehabilitating them, and then selling them for a profit after a relatively short period of time. This hard money financing charges substantially higher interest rates and fees than conventional loans, typically in the form of a two- or three-year, 9–10% interest-only note that must be paid in full at the end of the period.

6.      In addition to the unique characteristics of how the residential marijuana grows are purchased, the residential marijuana grow houses identified in this investigation often possess high power consumption rates that marked them as marijuana grow houses rather than single-family

Verified Complaint for Forfeiture *In Rem*

residences.  Large residential power use is often a feature of marijuana cultivation, which, when done indoors, requires significant electricity to power high-voltage lighting, fans, and other necessary equipment.  This power usage is established by records from SMUD or PG&E, and further tied to marijuana cultivation by comparing the monthly average power use since the home was purchased and the significantly lower monthly average prior to that purchase.  This comparative analysis identified many homes where electrical consumption jumped 3,000-4,000% after being acquired in the manner described above.  Additionally, electrical bills for these high-consumption properties were often paid with cash or money orders, a further indicator of marijuana trafficking due to the fact that it is a cash-intensive business.

7.     Further, law enforcement has learned that the organization of individuals involved in these converted residential marijuana grows oftentimes use nominee property owners.  The installation of a nominee property owner, also known as a "straw" or "straw owner," conceals and distances the identities of the true participants from the illegal activity occurring inside the residences.  The nominee owners listed as the record owner for homes connected to this investigation have followed a pattern: the person is often related to those involved in the daily activity of the marijuana grow, resides in a state located in the Midwest or East Coast—generally in New York, Texas or Ohio—earns insufficient income for a large home purchase, and does not contribute to the acquisition of the property.

8.     Finally, the properties identified in this investigation are located in residential neighborhoods and have been connected to a significant influx of criminal activity in addition to the manufacturing of controlled substances.  In particular, local law enforcement from Sacramento and surrounding areas have reported an increase in violent crime attributable to the expansion of indoor marijuana grows in residential areas.  Federal law enforcement has further identified numerous markers suggesting potential human labor trafficking associated with these residential marijuana grows, indicating an escalating intensity and breadth of criminal activity.  As a consequence, in 2017, the investigation grew to include multiple federal agencies to attempt to remove a source of increased criminal activity from residential areas of the Sacramento region.

9.     As the investigation has progressed, federal law enforcement first targeted smaller units of the organization, described below, before the current broader effort at destabilizing the overarching

4

group suspected of funding or operating these indoor residential marijuana grows.  These initial cases provide background information on parts of the broader organization, some of its typical means and methods, and other case discoveries that led to the current multi-agency investigation.

## FEDERAL TAKEDOWN OF LEONARD YANG CELL

10.    In 2016, law enforcement identified an Ohio-native named Leonard Yang as a participant in a large-scale residential marijuana operation in Sacramento County, and identified seven Sacramento residences connected to the criminal organization.  Each property consumed an unusually large amount of electricity and the properties were purchased with hard-money financing and tens-of-thousands of dollars wired to the United States from China.  Person A assisted Leonard Yang with the property acquisitions, even selling him a property he/she owned through a business.  Law enforcement has confirmed that Person A and Leonard Yang discussed the electrical amperage of the homes prior to purchase by Leonard Yang's group.  Person A received at least $59,000 for facilitating the property acquisitions by Leonard Yang's group.

11.    In September 2016, law enforcement executed federal search warrants at the seven residences and seized more than approximately 5,000 marijuana plants.  Each residence contained an active marijuana grow and law enforcement found documents connecting Leonard Yang's group to the Midwest and Eastern United States, and China.  A search of Leonard Yang's Cadillac uncovered $10,000 in cash, four different garage door openers and multiple house keys, items consistent with law enforcement's physical surveillance of Leonard Yang's regular visits to his network of residential grow sites prior to the September 2016 takedown.

12.    In September 2016, Leonard Yang and three co-conspirators were indicted in the Eastern District of California for violating federal drug laws, *United States v. Leonard Yang, et al.*, Case 2:16-cr-189-KJM, and the United States moved to forfeit the residences used to illegally grow marijuana, *United States v. 6340 Logan Street, Sacramento, California, et al.*, Case 2:16-cv-2259-KJM.   In August 2017, a Superseding Indictment charged Leonard Yang with money laundering crimes connected to three wire transfers from China that were then used to purchase marijuana grow houses in Sacramento.

///

Verified Complaint for Forfeiture *In Rem*

## FEDERAL TAKEDOWN OF XIU PING LI CELL

13.     In 2017, law enforcement identified Xiu Ping Li and others as participants in a large-scale marijuana cultivation and trafficking organization, and identified the nine properties connected to their drug trafficking efforts.  Xiu Ping Li was an investor in Leonard Yang's marijuana growing operation and had also purchased several homes herself, either in her name or in the names of her relatives.  Similar to the Leonard Yang takedown, each Xiu Ping Li property was located in the greater Sacramento area, consumed an unusually large amount of electricity, and bank records showed the properties were purchased with Chinese investment and then converted to illegal indoor marijuana grows.

14.     In July 2017, federal search warrants were executed at the nine residences and more than approximately 7,000 marijuana plants were found and seized.  At 7810 Elsie Avenue in Sacramento, a residence owned by Xiu Ping Li, law enforcement seized at least 1,000 marijuana plants and tax documents showing the organization's sophistication with straw ownership.  Law enforcement found a client copy of a 2016 tax return for Yan Bing Li, the owner of 8114 Suarez Way in Elk Grove, California, where law enforcement found and seized 259 marijuana plants.  Yan Bing Li is the 25-year old niece of Xiu Ping Li and, according to her own tax return, an employee of the Hibachi Grill & Buffet in Houston, Texas earning $13,000 annually.

15.     Law enforcement compared Yang Bin Li's 2016 tax return with her bank account records and 8114 Suarez Way's escrow file, which showed Yang Bin Li purchased the property for $416,000 in April 2017.  Approximately $175,700.00 was deposited into the property's escrow account, including a $5,000 personal check from Dao Zhong Wei (arrested during the Xiu Ping Li takedown), $70,700 wired from Xiu Ping Li, and $100,000 wired from Yan Bing Li's bank account.  The $100,000 consisted of a $48,944 wire from China and various cash deposits and checks from individuals arrested during the federal Xiu Ping Li takedown. The $48,944 originated from Agricultural Bank of China and was purportedly for "Travel."  A hard money lender funded the balance of 8114 Suarez Way's purchase price and the loan application stated that Yan Bing Li earns $5,500 per month from managing Flea-Mart Wine & Liquor in Brooklyn, New York, a position she has held for approximately 1½ years.  Yan Bing Li's bank records reveal no association with Flea-Mart Wine & Liquor in Brooklyn.  However,

Verified Complaint for Forfeiture *In Rem*

the same records establish that Yan Bing Li made the monthly mortgage payments after someone in Sacramento deposited large amounts of cash into her bank account.

16.     In September 2017, Xiu Ping Li, Gui W. Pan, Dao Zhong Wei, Xu Ru Li, Yongie Liu, Youan Li, Kong Liang Li, Chen Huang, and Guangzhao Li were indicted in the Eastern District of California on drug and money laundering charges, *United States v. Xiu Ping Li, et al.*, Case No. 16-cr-136-KJM.   The United States has subsequently moved to forfeit the real properties connected to the Xiu Ping Li cell.

## CONNECTIONS TO NEIGHBORING COMMUNITIES

17.     Separate from the federal investigation, state and local authorities have searched a number of properties that are also among those identified by the federal investigation as potentially tied to the organization under examination federally.  Several of these searches, which have led to the discovery of confirmed indoor marijuana cultivation sites, are described below.

18.     In June 2017, while federal law enforcement investigated the Xiu Ping Li cell, they learned of an earlier marijuana investigation conducted by the Yuba County Sheriff's Department.  In January 2017, Yuba County law enforcement opened an investigation into a marijuana trafficking organization operating in Northern California, specifically, in the Marysville, Sacramento, and Wilton, California areas.  In March 2017, law enforcement officials executed nine search warrants at marijuana cultivation sites, seized 4,493 marijuana plants, and arrested an individual identified as Zhen Shang Lin.  Law enforcement connected the Yuba County takedown and Zhen Shang Lin to the federal Xiu Ping Li takedown through a vehicle registered to Zhen Shang Lin that was present at a residence searched by federal agents in July 2017.

19.     In December 2017, while federal law enforcement investigated the organization of individuals converting Sacramento-area residences into marijuana grows, they learned the Elk Grove Police Department recently searched a residence located at 10357 Beckley Way and found 331 marijuana plants and 40 pounds of processed marijuana.  Law enforcement connected 10357 Beckley Way to 9717 Sutton Point Circle (*also in Elk Grove*) through Xiu Lan Guo, who gave at least $10,000 to the groups who acquired each property.  9717 Sutton Point was purchased using money wired from China, consumed an unusually large amount of electricity for a several month period, and Person A's

Verified Complaint for Forfeiture *In Rem*

real estate firm brokered the property acquisition.  Law enforcement further connected Xiu Lan Guo to the larger federal investigation via a $7,000 check written from Xiu Lan Guo to Alan Zheng, which was then used to purchase 653 Main Avenue in Sacramento.  Similar to the properties discussed above, 653 Main Avenue was purchased with wire transfers from China, financed with a hard money loan, and consumed industrial-levels of electricity.  On April 3, 2018, law enforcement searched 653 Main Avenue and found five pounds of processed marijuana, at least one room converted to grow marijuana, $7,500 in cash banded together with a pay/owe ledger, and documents for a trading business located in China.

## EXECUTION OF SEARCH WARRANTS

20.     In 2018, law enforcement identified several properties in Sacramento recently purchased, in whole or in part, with money wired from China to the United States.  In nearly every instance, the money from China was wired to the listed buyer's bank account in the United States and then moved into the property's escrow account.  Each wire from China was in an amount less than $50,000 and, in the case of property purchased with multiple Chinese wires, the wires occurred over a short period.  Additionally, SMUD records show that each property identified below consumed levels of power consistent with large-scale residential marijuana cultivation.

### 2033 Bastona Drive, Elk Grove, California

21.     On April 3, 2018, law enforcement executed a search warrant at 2033 Bastona Drive in Elk Grove, California and found an active marijuana grow containing 1,070 marijuana plants.  One of the listed owners of Defendant 2033 Bastona Drive is Min Hui Jiang, who in September 2016 transferred $152,000 from his/her bank account into escrow to acquire the property.  A large portion of that wire transfer is traceable to Chinese wire transfers to Min Hui Jiang's bank account:  $49,985 on September 20, $49,989 on September 22, and $49,989 also on September 22, 2016.  Additionally, defendant 2033 Bastona Drive electrical use exceeded 11,000 KwH/month of power from September 2017 to February 2018.

### 5313 Kungsting Way, Elk Grove, California

22.     On April 3, 2018, law enforcement executed a search warrant at 5313 Kungsting Way in Elk Grove, California and found an active marijuana grow containing 620 marijuana plants.  Law

8

enforcement also located multiple items of equipment used to grow marijuana.  Defendant 5313 Kungsting Way was purchased with money wired to the United States from China, financed with hard money loans, and consumed at least 9,000 KwH/month since January 2018.

### 5759 Muskingham Way, Sacramento, California

23.    On April 3, 2018, law enforcement executed a federal search warrant at 5759 Muskingham Way in Sacramento, California and found an active marijuana grow containing 654 marijuana plants and over 10 pounds of processed marijuana.  The original buyer of Defendant 5759 Muskingham Way was Yue E. Chen, who also owns 8620 Port Haywood in Sacramento, a property searched on April 3, 2018 and found to contain 652 marijuana plants.  Yue E. Chen obtained the property using, in part, money wired to the United States from China and hard money loans.  Sometime in 2017, the hard money lender became aware of the marijuana activities at the property, which resulted in Yue E. Chen transferring the property to the then-SMUD subscriber, Li Tan Lin.  Since February 2017, the property has consumed power at levels consistent with residential marijuana cultivation.

### 8061 Maybelline Way, Sacramento, California

24.    On April 4, 2018, law enforcement executed a federal search warrant at 8061 Maybelline Way in Sacramento, California and found a portion of the residence converted to grow marijuana, with grow lights, filters, plastic covering, reflective material on the walls, and a ventilation system.  The listed owner of 8061 Maybelline Way is Zhong Chen who obtained the property as a "residential rental" for $339,000 in June 2017, using two wires from China—$49,980 and $49,499.38—to complete the purchase.  On March 6, 2018, Sacramento Police conducted a marijuana inspection at the property and observed signs the residence was a marijuana grow, including the installation of a security system and fortifications.  Further, SMUD records show that 8061 Maybelline Way consumed levels of power consistent with large-scale residential marijuana cultivation.

### 9043 Pembridge Drive, Elk Grove, California

25.    On April 4, 2018, law enforcement executed a federal search warrant at 9043 Pembridge Drive in Elk Grove, California and found an active marijuana grow containing 500 marijuana plants. The listed owner of defendant 9043 Pembridge Drive is Jing Sheng Jiang, a Pennsylvania native, who purchased the property as a "residential rental" for $360,000 in March 2017.  Defendant 9043

Verified Complaint for Forfeiture *In Rem*

Pembridge Drive with money wired to the United States from China, financed with hard money loans, and consumed high-levels of electricity.  Further, Jing Sheng Jiang invested at least $73,000.00 in the purchase of 7701 Manet Parkway in Sacramento, a property searched on April 3, 2018 and found to contain several bags of processed marijuana.

## 9445 Medstead Way, Elk Grove, California

26.     On April 3, 2018, law enforcement executed a search warrant at 9445 Medstead Way in Elk Grove, California and found an active marijuana grow containing 642 marijuana plants and multiple pieces of marijuana grow equipment.  The listed owner of defendant 9445 Medstead Way is Zhaowei Xie who purchased the property as a "residential rental" for $410,000 in May 2017. Defendant 9445 Medstead Way was purchased with money wired from China to Zhaowei Xie's JP Morgan Chase account, specifically, $45,000.00 on May 12, 2017 and another $41,000.00 two days later.  A hard money lender financed 70% of the purchase price and the property has consumed at least 12,000 KwH/month of power since December 2017.

## FIRST CLAIM FOR RELIEF
### 18 U.S.C. § 981(a)(1)(C)

27.     Paragraphs one to twenty-six above are incorporated by reference as though fully set forth herein.

28.     The United States alleges that the defendant assets were derived from proceeds traceable to an offense constituting a "specified unlawful activity" as defined in 18 U.S.C. § 1956(c)(7), which incorporates the definition of "specified unlawful activity" found in 18 U.S.C. § 1961(1), and are therefore subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(C).  Violations of federal drug laws, Title 21, United States Code, Section 841(a)(1), constitute "specified unlawful activity" as defined in § 1961(1).

29.     By reason of the above, the defendant properties are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

## SECOND CLAIM FOR RELIEF
### 18 U.S.C. § 981(a)(1)(A)

30.     Paragraphs one to twenty-six above are incorporated by reference as though fully set

10

Verified Complaint for Forfeiture *In Rem*

forth herein.

31.     The defendant properties, including any right, title and interest in the whole of any lot or tract of land and any appurtenances or improvements thereon, are subject to forfeiture to the United States pursuant to 18 U.S.C. § 981(a)(1)(A) because they were involved in a transaction or attempted transaction in violation of 18 U.S.C. § 1956(a)(1)(B)(I).  Specifically, the criminal defendants identified herein, conducted or attempted to conduct financial transactions with proceeds of a specified unlawful activity knowing that the transactions were designed in whole or in part to conceal or disguise the nature, location, source, or ownership of the proceeds of specified unlawful activity, and that while conducting and attempting to conduct such financial transactions knew that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, all in violation of 18 U.S.C. § 1956(a)(1)(B)(I).

32.     Title 18, United States Code, Section 1956(h) further provides that "[a]ny person who conspires to commit any offense defined in this section [1956] or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."  For purposes of Section 1956, "specified unlawful activity" includes, among other things, violations of federal drug laws, Title 21, United States Code, Section 841(a)(1).  Title 18, United States Code, Section 1957 provides that person commits a crime when s/he "knowingly engages or attempts to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity."

33.     By reason of the above, the defendant properties are subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(A).

**THIRD CLAIM FOR RELIEF**
**21 U.S.C. § 881(a)(6)**

34.     Paragraphs one to twenty-six above are incorporated by reference as though fully set forth herein.

35.     The defendant properties constitutes money or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance or listed chemical, all proceeds traceable to such an exchange, and/or was used or intended to be used to facilitate one or more

11

Verified Complaint for Forfeiture *In Rem*

violations of 21 U.S.C. § 841 et seq.

36.     By reason of the above, the defendant properties are subject to forfeiture pursuant forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(6).

**FOURTH CLAIM FOR RELIEF**
**21 U.S.C. § 881(a)(7)**

37.     Paragraphs one to twenty-six above are incorporated by reference as though fully set forth herein.

38.     The defendant properties, including any right, title and interest in the whole of any lot or tract of land and any appurtenances or improvements thereon, is subject to forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7) because it was used and intended to be used to commit or facilitate a violation of 21 U.S.C. §§ 841 et seq., an offense punishable by more than one year's imprisonment.

39.     By reason of the above, the defendant properties are subject to forfeiture pursuant forfeiture to the United States pursuant to 21 U.S.C. § 881(a)(7).

40.     The United States does not request authority from the Court to seize the defendant properties at this time.  The United States will, as provided by 18 U.S.C. § 985(b)(1) and (c)(1):

        a.      post notice of this action and the Complaint on the defendant properties,

        b.      serve notice of this action on the defendant properties owner along with a copy of this Complaint; and

        c.      file with the county where the properties are located a lis pendens providing notice of the properties' status as defendants in this in rem forfeiture action.

41.     Title 18 U.S.C. § 985(c)(3) provides that, because the United States will post notice of this Complaint on the defendant properties, it is not necessary for the Court to issue an arrest warrant in rem, or to take any other action to establish in rem jurisdiction over the defendant properties.

**PRAYER FOR RELIEF**

WHEREFORE, the United States prays that:

1. Process issue according to the procedures of this Court in causes of action *in rem*;

2. Any person having an interest in said defendant properties be given notice to file a claim and

12

1  to answer the complaint;

2       3.  The Court enter a judgment of forfeiture of said defendant properties to the United States; and

3       4.  The Court grant such other relief as may be proper.

4  Dated:   4/5/2018                                          MCGREGOR W. SCOTT
                                                                    United States Attorney
5

6                                                     By:     /s/ Kevin C. Khasigian
                                                                    KEVIN C. KHASIGIAN
7                                                                 Assistant U.S. Attorney

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                          Verified Complaint for Forfeiture *In Rem*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**VERIFICATION**

I, Lisa Ulrikson, hereby verify and declare under penalty of perjury that I am a Special Agent with the United States Department of the Treasury, Internal Revenue Service Criminal Investigation, that I have read the foregoing Verified Complaint for Forfeiture *In Rem* and know the contents thereof, and that the matters contained in the Verified Complaint are true to the best of my knowledge and belief.

The sources of my knowledge and information and the grounds of my belief are the official files and records of the United States and information supplied to me by other law enforcement officers, together with others, as a Special Agent with the United States Department of the Treasury, Internal Revenue Service Criminal Investigation.

I hereby verify and declare under penalty of perjury that the foregoing is true and correct.

Dated:   4/5/2018

/s/ Lisa Ulrikson
LISA ULRIKSON
Special Agent
United States Department of the Treasury, Internal
Revenue Service Criminal Investigation

(Original signature retained by attorney)

14

Verified Complaint for Forfeiture *In Rem*

**EXHIBIT A**

**2033 Bastona Drive, Elk Grove, California**

Real property in the City of Elk Grove, County of Sacramento, State of California, described as follows:

Lot 100, as shown on the "Final Map of Laguna West Unit 27 Village 1B", Filed September 1, 1999 in Book 264 of Maps, Map No. 9, Sacramento County Records.

EXCEPTING THEREFROM all oil, gas and other hydrocarbon substances, inert gases, minerals, and metals, lying below a depth of 500 feet from the surface of said land and real property, whether now known to exist or hereafter discovered, including but not limited to the rights to explore for, develop, and remove such oil, gas, and other hydrocarbon substances, inert gases, minerals, and metals without, however, any right to use the surface of such land and real property or any other portion thereof above a depth of 500 feet from the surface of such land and real property for any purpose whatsoever.

APN: 119-1860-037-0000

Verified Complaint for Forfeiture *In Rem*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT B**

**5313 Kungsting Way, Elk Grove, California**

     Real property in the City of Elk Grove, County of Sacramento, State of California, described as follows:

     LOT 47 AS SHOWN ON THE MAP ENTITLED "SUBDIVISION NO. 02-358.2, SOUTHMEADOWS UNIT 2" FILED IN THE OFFICE OF THE COUNTY RECORDER OF SACRAMENTO COUNTY, CALIFORNIA ON APRIL 1, 2004 IN BOOK 3274 OF MAPS, AT PAGE 9.

APN: 132-1620-047-0000

Verified Complaint for Forfeiture *In Rem*

**EXHIBIT C**

**5759 Muskingham Way, Sacramento, California**

Real property in the City of Sacramento, County of Sacramento, State of California, described as follows:

Lot 34, as shown on the "Plat of Arlington Park; reekside Phase 3", in the City of Sacramento, County of Sacramento, State of California, filed in the Office of the Recorder of Sacramento County on December 12, 1996, in Book 244 of Maps, Map No. 9.

APN: 117-1280-034-0000

Verified Complaint for Forfeiture *In Rem*

**EXHIBIT D**

**8061 Maybelline Way, Sacramento, California**

The land described herein is situated in the State of California, County of Sacramento, City of Sacramento, described as follows:

Lot 222, as shown on the "Plat of Valley Hi Unit No. 4", filed in the Office of the County Recorder of Sacramento County, California, in Book 71 of Maps, Map No. 23.

APN: 117-0051-008-0000

18

Verified Complaint for Forfeiture *In Rem*

**EXHIBIT E**

**9043 Pembridge Drive, Elk Grove, California**

The land described herein is situated in the State of California, County of Sacramento, City of Elk Grove, described as follows:

LOT 51, AS SHOWN ON THE HAMPTON VILLAGE NO. 5A AKA WINDSOR, FILED IN THE OFFICE OF THE COUNTY RECORDER OF SACRAMENTO COUNTY ON SEPTEMBER 17, 1997, IN BOOK 248 OF MAPS, MAP NO. 1.

EXCEPTING THEREFROM THAT PORTION THEREOF LYING BELOW A DEPTH OF 500 FEET, MEASURED VERICALL Y, FROM THE CONTOUR OF THE SURFACE OF THE SAID PROPERTY, AS SERVED BY SOUTHERN PACIFIC INDUSTRIAL DEVELOPMENT COMPANY, A DELAWARE CORPORATION, IN THE DEED DATED OCTBOER 17, 1984, RECORDED OCTOBER 23, 1984 IN BOOK 84 10 23, PAGE 999, OFFICIAL RECORDS. SAID DEED STATES, IN PART, "GRANTOR OR ITS SUCCESSORS AND ASSIGNS, SHALL NOT HAVE THE RIGHT OF FOR ANY PURPOSE WHATSOEVER TO ENTER UPON, INTO OR THROUGH THE SURFACE OF SAID PROPERTY OR ANY PART THEREOF LYING BETWEEN SAID SURFACE AND 500 FEET BELOW SAID SURFACE.

APN: 134-0730-009-0000

Verified Complaint for Forfeiture *In Rem*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**EXHIBIT F**

**9445 Medstead Way, Elk Grove, California**

The following described property in the City of Elk Grove, County of Sacramento, State of California:

LOT 130 OF LAGUNA CREEK WEST UNIT NO. l5B, ACCORDING TO THE OFFICIAL PLAT THEREOF, FILED IN THE OFFICE OF THE RECORDER OF SACRAMENTO COUNTY, CAUFORNIA, ON JANUARY 12, 1989, IN BOOK 189 OF MAPS, MAP NO. 7.

EXCEPTING THEREFROM ALL OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, INERT GASES, MINERALS AND METALS LYING BELOW A DEPTH OF 500 FEET FROM THE SURFACE OF SAID LAND AND REAL PROPERTY, WHETHER NOW KNOWN TO EXIST OR HEREAFTER DISCOVERED, INCLUDING BUT NOT UMITED TO THE RIGHTS TO EXPLORE FOR, DEVELOP AND REMOVE SUCH OIL, GAS AND OTHER HYDROCARBON SUBSTANCES, INERT GASES, MINERALS AND METALS WITHOUT, HOWEVER, ANY RIGHT TO USE THE SURFACE OF SUCH LAND AND REAL PROPERTY OR ANY OTHER PORTION THEREOF ABOVE A DEPTH OF 500 FEET FROM THE SURFACE OF SUCH LAND AND REAL PROPERTY FOR ANY PURPOSE WHATSOEVER AS RESERVED IN THE DEED FROM FLOYD PEDERSEN AND JEAN PEDERSEN TO WBB/ AAB, INCORPORATED, A CAUFORNIA CORPORATION, RECORDED JANUARY 7, 1987, AS INSTRUMENT NO. 3974.

APN: 116-0670-046-0000

Verified Complaint for Forfeiture *In Rem*